# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

WESLEY ZIMMERMAN,

    Plaintiff,

vs.

MIKE CRABTREE, *et al.,*

    Defendants.

Case No. 1:08-cv-830

Barrett, J.
Black, M.J.

## REPORT AND RECOMMENDATION[1] THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 33) BE GRANTED

Plaintiff is an inmate who brings this *pro se* action pursuant to 42 U.S.C. § 1983. The case is before the Court on Defendants' motion for summary judgment (Doc. 33) and the parties' responsive memoranda (Docs. 36, 37).

## I. FACTS

Plaintiff was booked into the Scioto County Jail on February 12, 2008. He was charged with Having a Weapon While Under Disability, a felony of the third degree, and Illegal Assembly or Possession of Chemicals for Manufacture of Drugs, a felony of the third degree. On March 28, 2008, Deputy Phil Staker was escorting inmate Cameron Simmons from B Pod to A Pod in order to make room for another inmate in B Pod. (Doc. 33, Ex. A Affidavit of Phil Staker, hereinafter "Staker Aff.", at ¶ 3).

It is not disputed that inmate Simmons assaulted Plaintiff shortly after arriving back inside A Pod. According to Plaintiff, inmate Simmons struck him in the face while

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

he was in bed. (Doc. 1, ¶¶ 8-9, Staker Aff., ¶ 5). Plaintiff did not seek help right away. Instead, he went to the restroom to clean himself off. (Doc. 1, ¶ 10; Doc. 33, Ex. 2). When Plaintiff returned from the restroom, inmate Simmons struck Plaintiff in the head with a pair of hair clippers. (Doc. 1 ¶¶ 11-12; Staker Affidavit, ¶ 5). Plaintiff then pressed the help button and alerted corrections officers as to the situation. (Doc. 1, ¶ 13; Doc. 33, Staker Aff., ¶ 4). Deputy Staker responded to the help call within two minutes. (Doc. 33, Staker Aff., ¶ 4; *See also* Doc. 1, ¶ 14). Upon arrival, Deputy Staker saw inmate Zimmerman standing close to the A Pod door. (Doc. 33 Staker Aff., ¶ 4). Inmate Zimmerman was bleeding from his head area, right shoulder area and mouth area. *Id*. Deputy Staker immediately removed inmate Zimmerman from A Pod and escorted him to the booking area for medical treatment. (*Id*.; Doc. 1, ¶ 17).

Following the assault, inmate Simmons was removed from A Pod and placed on lock down. (Doc. 33, Staker Aff., ¶ 6). Deputy Staker completed a jail incident report as well as an Ohio Uniform Incident Report against inmate Simmons for felonious assault. (*Id.*) Inmate Simmons was prosecuted for the assault. (*Id.*)

There was no prior indication that inmate Simmons was going to assault Plaintiff. Prior to the incident, inmate Simmons had never assaulted Plaintiff. (Doc. 33, Ex. 2). Inmate Simmons had never threatened Plaintiff with physical harm. (*Id.*). As such, Plaintiff did not make any verbal or written complaints regarding inmate Simmons prior to March 28, 2008. (*Id.*). Indeed, none of the Defendants were aware of any threat to Plaintiff by inmate Simmons. (Doc. 33, Staker Aff., ¶ 7; Doc. 33 Affidavit of Shawn

Sparks, hereinafter "Sparks Aff.", ¶ 9).

Furthermore, the Scioto County Sheriff's Office has a written policy which provides that inmates will be classified based on sex, tendency for violent behavior, special needs (mental and physical handicaps), and age and prior criminal behavior. (Doc. 33, Affidavit of Sheriff Donini, hereinafter "Donini Aff." at ¶ 5). In addition, a classification checklist will be completed during the booking process. *Id.* The classification will be reviewed by a shift supervisor or other officer in charge. *Id.* Finally, inmates will be re-classified throughout their incarceration whenever their circumstances change (*e*.g., new criminal charges, inappropriate behavior, receipt of holders from other jurisdictions, etc.). *Id.*

Next, corrections officers at the Scioto County Jail receive corrections officer training based on a curriculum approved by the Ohio Peace Officers Training Academy. (Doc. 33, Donini Aff., at ¶ 6; Staker Aff., at ¶ 2; Sparks Aff., at ¶ 2). In addition, corrections officers are trained in the Scioto County Sheriff's Office's written directives within 60 days of their employment date. (Doc. 33, Donini Aff., at ¶ 6). Moreover, new corrections officers are assigned to a more experienced Field Training Officer for a minimum duration of 90 days. (*Id.*) The field training officer conducts additional training and evaluation in such areas as (1) compliance with rules, (2) inmate contacts, (3) work judgments, (4) initiative, (5) ethics, and (6) professionalism.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

"Summary judgment is only appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007)(quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

## III. ANALYSIS

*A. Plaintiff has failed to show that his Constitutional rights were violated.*

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or

laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Sigley v. City of Parma Hts*., 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Here, Plaintiff's complaint alleges that Defendants failed to protect him from an assault by another inmate while at the Scioto County Jail in violation of the Eighth Amendment. Plaintiff further alleges: (1) inadequate staff/inmate ratio; (2) failure to maintain a proper classification system, (3) inadequate training, (4) failure to make reasonable and periodic inspections, (5) overpopulation and (6) failure to enforce jail security rules led to his assault. ( Doc. 1, ¶¶ 22, 26).

Plaintiff's claim that he was attacked by another inmate implicates the Eighth Amendment prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII; *see Farmer v. Brennan*, 511 U.S. 825 (1994) ("Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.").

However, jail officials do not violate a detainee's rights under the Eighth and Fourteenth Amendments every time one prisoner inflicts injury on another. *Farmer,* 511 U.S. at 834. The Supreme Court set out two requirements for liability in this situation: (1) "the deprivation alleged must be, objectively, 'sufficiently serious' . . . . The inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm; and (2) "a [jail] official must have a . . . . state of mind . . . of 'deliberate indifference' to inmate health or safety." *Id.*

Deliberate indifference exists only if a jail official knows of and disregards an

excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. This means "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Further, to succeed in an action under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). Here, Plaintiff cannot show either deliberate indifference or personal involvement.

In regards to Deputy Staker, Plaintiff appears to argue that he is liable simply because he was on duty at the time of the assault. However, jail officials are not liable under the Eighth Amendment for an assault by one inmate on another merely because they are on duty at the time of the assault. *See Gibson v. Foltz*, 963 F.2d 851, 853-54 (6th Cir. 1992).

Plaintiff further asserts that Deputy Staker is liable because he "chose to ignore" the hair clippers that had been inadvertently left in A-pod. Plaintiff, however, presents no evidence that Deputy Staker nor any other Scioto County Sheriff's deputy ignored the hair clippers. Plaintiff presents no evidence that Deputy Staker nor any other Scioto County Sheriff's deputy even knew that the hair clippers were in A-pod. The evidence presented shows that Deputy Staker's actions were entirely reasonable. When Plaintiff called for help, Deputy Staker responded quickly and immediately took Plaintiff out of A-pod so that he could receive medical attention. He then investigated the incident, placed inmate Simmons on lockdown, and completed reports to assist in the prosecution

of inmate Simmons for the assault. (Doc. 33, Staker Aff. at ¶¶ 4-6). As such, the undersigned finds that Deputy Staker is entitled to judgment as a matter of law with respect to Plaintiff's claims

With respect to Defendants Commissioner Crabtree, Sheriff Donini and Captain Sparks, it is clear that they had no personal involvement in the incident itself. Thus, Defendants maintain that Plaintiffs' claims against these Defendants may go forward, if at all, only under a theory of supervisory liability. Here, however, Plaintiff has failed to muster sufficient evidence to meet this stringent standard of liability.

Plaintiff appears to argue that Defendants Crabtree, Donini, and Sparks are liable because they failed to train each other and failed to properly train the deputies. Yet, to establish supervisory liability, it is not enough to point after the fact to a particular sort of training which, if provided, might have prevented the harm suffered in a given case. Rather, such liability attaches only if a constitutional violation is "part of a pattern" of misconduct, or "where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to occur." *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.) (citations omitted), *cert. denied*, 459 U.S. 833 (1982). Thus, only in such circumstances can it be said that a supervisor's liability rests upon "active unconstitutional behavior," as opposed to "a mere failure to act." *Shehee*, 199 F.3d at 300 (internal quotation marks and citation omitted).

Accordingly, the undersigned finds that Plaintiff has failed to show a constitutional

violation.

> B.	*Plaintiff's Official Capacity Claims*

Plaintiff has sued all Defendants in their official capacity. A claim against a municipal or county official in his official capacity is considered a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Because there is no *respondeat superior* liability under § 1983, to establish an official capacity claim a plaintiff must show that the enforcement of the official entity's policy or custom caused the violation of the plaintiff's federal or constitutional right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989).

Because a plaintiff cannot rely on *respondeat superior* to hold a municipality liable under § 1983 he must show that the municipality's policy (or lack thereof) was a "moving force" in the deprivation of the plaintiff's rights and arose from "deliberate indifference" to the plaintiff's rights. *See Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 508 (6th Cir. 1996). In other words, a plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy has the burden to "identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.), *cert. denied*, 510 U.S. 1177 (1999)).

Here, Plaintiff has failed to meet his burden to show official capacity liability. At the outset, Plaintiff does not identify which, if any, of the policies, procedures or customs

of the Scioto County Sheriff's Office are unconstitutional. Moreover, Defendants have approved many policies in order to ensure the safety of inmates at the Scioto County Jail. As noted by Defendants, these policies include:

(1) An inmate classification policy for the purpose of housing inmates appropriately based on sex, age, behavior and criminal history;

(2) A training policy for the purpose of maintaining consistent, efficient and professional operational practices at the Scioto County Jail; and

(3) Various security protocols to continuously monitor inmate activity, and ensure that weapons are kept out of the jail.

(Doc. 33, Donini Aff. ¶¶ 5, 6, 7; Doc. 33, Sparks Aff. ¶ 7, Ex. 4).

Furthermore, as noted by Defendants, even if there were a constitutionally inadequate policy—which is denied—there is no evidence that the policy was the "moving force" behind that constitutional violation.² *Graham v. Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (citing *Waters v. City of Morristown*, 42 F.3d 353, 362 (6th Cir. 2001)). Indeed, there can be no municipal liability where "an otherwise sound program has occasionally been negligently administered." *Graham*, 358 F.3d at 385. The fact that individual actors may "occasionally make mistakes . . . says little about the . . . legal basis for holding the [County] liable." *Id*.

Accordingly, the undersigned finds that Plaintiff's official capacity claims fail as a matter of law, and Defendants are therefore entitled to summary judgment with respect to

---

² As noted above, Plaintiff has failed to show that his constitutional rights were violated, thus, at the outset, Plaintiff's official capacity claims must fail.

those claims.

   C.   *Defendants are entitled to Qualified Immunity*

To the extent that the Plaintiff is suing the Defendants in their individual capacities, they assert that they are entitled to qualified immunity. The undersigned agrees, and finds that Defendants are entitled to qualified immunity because Plaintiff has not shown either a constitutional violation nor that Defendants actions were "objectively unreasonable" in light of clearly established law. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-1158 (6th Cir. 1996); *see also McCloud v. Testa*, 97 F.3d 1536, 1542 (6th Cir. 1996) (finding that the burden of disproving qualified immunity rests with the plaintiff).

   C.   *Plaintiff's state law claims should be dismissed*

Pursuant to 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. *Dobbs-Weinstein v. Vanderbilt Univ.,* 185 F.3d 542, 546 (6th Cir. 1999), *cert. denied,* 529 U.S. 1019 (2000). Moreover, the Sixth Circuit has recognized a general rule disfavoring a district court's exercise of pendent jurisdiction when federal question claims are dismissed before trial. *See Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)); *see also Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th Cir. 1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits.").

Here, it appears that Plaintiff's complaint asserts state law claims relating to the security of the prison, as well as for conversion. However, because Plaintiff's federal claims are without merit, this Court should not maintain pendant jurisdiction over Plaintiff's state law claims. *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *see also Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001)**.**

Accordingly, in light of the recommendation that the Defendants are entitled to summary judgment on Plaintiff's federal claims, it is further recommended that Plaintiff's state law claims should be dismissed without prejudice.

## IV.  CONCLUSION

Accordingly, based on the foregoing, the undersigned finds that there are no material facts in dispute and that Defendants are entitled to judgment as a matter of law. It is therefore **RECOMMENDED** that Defendants' motion for summary judgment (Doc. 33) be **GRANTED**; and this case **CLOSED**.

Date: 5/27/10, nunc pro tunc 5/13/10,　　　　　　　　s/ Timothy S. Black
reflecting work as the assigned　　　　　　　　　　　Timothy S. Black
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WESLEY ZIMMERMAN,

    Plaintiff,

vs.

MIKE CRABTREE, *et al.,*

    Defendants.

Case No. 1:08-cv-830

Barrett, J.
Black, M.J.

**NOTICE**

    Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **14 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **14 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).